[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON A CONDEMNATION APPEAL
The appellant, Chase Crossroads Waterford Square, LLC ("Chase Crossroads"), in the above entitled condemnation appeal from a taking of its real property by eminent domain.
The appellant filed his brief on June 20, 2002 after a court trial on June 7, 2002.
The condemnation appeal turns upon the valuation of an undeveloped portion of an older community shopping center. The court has reviewed the property in accordance with the statute.
 FACTS
On September 28, 2001 the Commissioner acquired, by eminent domain, 1,834 square feet of Chase's land in fee simple; a 7,670 square foot slope easement; 500 square foot drainage right of way and a temporary right to install sedimentation controls on an undeveloped portion of the Crossroad Center in Waterford. The purpose of the project was to widen and realign several of the Waterford feeder roads to 1-95 to make entry and exiting from 1-95 safer. The Crossroads Center is a community shopping center. It is located at Cross Road and Waterford Parkway North, near 1-95. The land acquired by the Commissioner is away in an isolated and undeveloped portion of the 56,340 acre parcel of land which comprises Crossroad Center.
The appraisers agree that there would be no severance damage to the shopping center. There was no loss in rent, increase in vacancies, or impairment of future expansion. Each appraiser valued the subject as if CT Page 9084 it was a 56,340 acre parcel of raw land with a potential for retail development.
The State's appraiser, Charles Wisnioski, testified that the condemned portion of that parcel was swampy, isolated and overgrown with all sorts of vegetation. Before the condemnation, it was bisected by a line of high voltage electrical transmission poles and two easements which run in favor of the Town of Waterford. It is situated within the limits of the 75 foot front setback line. Wisnioski was of the opinion that the condemned land was wetland and situated in a flood hazard area. Robert Mulready, Chase's appraiser, disagreed. Wisnioski also opined that the condemned land was encumbered by the Crossroad Bog Preservation Easement, which bars all development within its limits. Mulready also disagreed with this proposition. Wisnioski testified that the condemned land was not developable and that its highest and best use was to provide a buffer for the developable portions of the land. Wisnioski concluded that the easements would reduce the value of the encumbered portions of the land by 75%. Mulready reduced the value of the encumbered land by 90% and reasoned that since the easements are permanent, they will effectively prevent the owner from doing anything with the encumbered portion of the land.
The State claims that the impact of the Commissioner's easement was minimal and of little value. Its appraiser measured the fair market value of the land, free of the easement, as against the fair market value of the land encumbered by the easement and found that the easement area was a flood area, a wetlands and subject to no preservation easement.
The State also claims where the highest and best use of the property is not uniform throughout the tract in question, an appraiser may testify to the highest and best use of the different portions of the tract involved. Department of Transportation v. HP/Meecham Land Ltd.,614 N.E.2d 485, 488 (Ill. 2 Dist. 1993). The State claims that Mulready ignored that complicating factor and appraised the land as if it had a uniform highest and best use. He arrived at a unit value of $3.00 per square foot. Wisnioski sought to address the complexity of the adjustment process and arrived at a weighted unit value of $2.64 per square foot. The State claims that a prudent buyer would not pay top dollar for land that contains sizable undevelopable stretches.
In contrast to the State's view, Chase points out that Mulready gave a well-reasoned appraisal as its expert witness who answered questions directly in contrast with the State's appraiser, Wisnioski, who refused to answer questions, gave evasive answers, provided inconsistent testimony, and actually contradicted himself. CT Page 9085
Wisnioski determined the value of the property by using a comparable sales analysis, and by focusing on seven alleged comparable sales. He then ignored four of those seven, ultimately utilizing only three of the purported comparable sales to arrive at his estimate of the value of the property. of the seven comparables listed in the appraisal report, six of those supposed comparables were not in the equivalent zones. On valuating subject land, there could be nothing more important to the determination than utilizing property of a like soon wherein a retail shopping center could be built as a matter of right.
For example, the State's expert relied on the comparable sale one at 110 Cross Roads, which was not equivalent to the subject property. While it might have supported a retail business, it could not, as a matter of right, support a retail shopping center. The appraiser then tried to justify his use of that property as being similar by suggesting that based upon its proximity, it was possible to utilize the land in comparable sale one for a retail shopping center. However, Mulready points out that possibility would have required a special exception, a variance, or a zone change. In order to be used as a comparable sales approach, a comparable sale must be one that sufficiently resembles the subject property with respect to time, place and circumstances that a reasonable person would consider in evaluating fair market value . . . The most appropriate utility of the comparative sales approach must consider elements of comparison between comparable properties and the subject, and these include among others, size, shape, character of the property, location, time of sales, use to which it is put, adoptability zoning and available utilities, Peter Rock Associates v. North Haven,46 Conn. Sup. 458, 467-68 (1998) aff'd, 59 Conn. App. 1 (2000). The State's appraiser improperly employed the property as a comparable when its zoning prevented useful comparison and where the appraiser was required to speculate on what zoning changes might be achieved for the supposed comparable property through an application for a zone change. Also, because comparable sale two relied upon by Wisnioski is zoned for industrial as opposed to retail shopping center, it cannot provide a proper basis for valuation of the subject property. Chase argues that these supposedly comparable sales should not be considered as proper comparables for the purposes of substantiating a sound and accurate comparable sales analysis. In fact, the only useful comparable that was relied upon by Wisnioski, claims Chase, was comparable sale three. However, use of that sale information yields a much higher value for the subject property than was ascribed to the property by the State's expert.
 DISCUSSION
The Court finds that the major inconsistency with the State's evidence CT Page 9086 was at the analysis utilized by the State's appraiser which was contradicted by the State's own exhibits, Exhibit 3 and Exhibit 5. Wisnioski maintained that the condemned property was within a bog easement as described in Exhibit 3. However, there was no map attached to the State's Exhibit 3. Instead the State attempted to rely on Exhibit 5. On that map there is an exception, number seven to the title which is well delineated, and in fact was highlighted in pink. That highlighted area sits adjacent to and not within the condemned property which is denoted on Exhibit 5 by the yellow highlighting placed on the exhibit by the State's appraiser, who then tried to back-pedal from his initial position that the condemned property was within the bog easement, wherein he claimed it was adjacent to the bog easement.
The Court finds that the State's expert's testimony must be rejected. The fact that he attributed only 25% of the fair market value of the land effected by the slope easement was because the condemned property was allegedly within some existing easements, which is not set forth on the State's Exhibit 5. The State's own map contradicts its appraiser's claims. The Court finds that Wisnioski's opinion is not supported by the evidence. The ultimate conclusion then, that has been reached by him, lacks proper evidentiary basis and may not be relied upon by the Court.
By contrast, this Court finds that Mulready testified that he had discussed the slope easement with the State's representative, whom he identified. Further, as set forth in State's Exhibit 1, the condemnation included a permanent and perpetual slope easement, which Mulready testified, according to the State's own engineers and plaintiffs engineers, constituted a taking. Hence, Mulready properly assessed 90% of the fair market value for the permanent and perpetual easement.
 CONCLUSION
The Court therefore rejects the testimony of the State's expert and accepts that of Chase's expert. Accordingly, the Court adopts Mulready's appraisal and hereby renders an award in favor of the defendant appellant, Chase Crossroads, for the full value of $27,711.00 as set forth herein; plus reasonable appraisal and testimony fees in the amount of $2,500.00 pursuant to General Statutes § 48-26; and reasonable interest upon said award from September 28, 2001 to the date of payment pursuant to Connecticut General Statutes § 37-3c at the rate of 10% in accordance with such statute.
Hurley, JTR CT Page 9087